IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-30076-SPM |
| NIRAV B. PATEL, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of five Motions in limine filed by the United States prior to the jury trial in this case. (*See* Docs. 44, 49, 50, 51). The United States's First Motion in Limine (Doc. 44) seeks to permit the admission of statements made by Defendant Nirav B. Patel's co-conspirators; the Second Motion in Limine (Doc. 49) seeks to pre-authenticate business records; the Third Motion in Limine (Doc. 50) seeks to address translation issues; the Fourth Motion in Limine (Doc. 51) seeks to clarify whether law enforcement must be qualified as experts to testify regarding cell phone data extraction; and the Fifth Motion in Limine (Doc. 67) seeks to admit the translation of text messages subject to later foundation testimony at trial. Having been fully informed of the issues presented, all five of the United States's Motions in Limine are **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In June 2023, a grand jury returned a two-count indictment against Defendant Patel, charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. §

1349 and wire fraud in violation of 18 U.S.C. § 1343. (*See* Doc. 4). A grand jury returned a five-count superseding indictment against Defendant Patel on August 20, 2024, charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 2 and 1349; three counts of wire fraud in violation of 18 U.S.C. §§ 2 and 1343; and one count of illegal entry in violation of 8 U.S.C. §§ 1325(a)(2) and 1329. (*See* Doc. 39). The Government filed its First Motion in Limine on September 9, 2024 (*see* Doc. 44) and filed the other three Motions in Limine on September 26, 2024 (*see* Docs. 49, 50, 51). The Fifth Motion in Limine was filed on January 11, 2024 (*see* Doc. 67). Defendant Patel has not responded to any of the pending Motions, but Defense Counsel did indicate that they do not object to the Fifth Motion in Limine. (Doc. 67).

## ANALYSIS

It is well established that motions in limine are the proper way to streamline trials by settling evidentiary disputes in advance so as to not interrupt trials and confuse the jury with complex evidentiary issues. *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

### I. Government's First Motion in Limine (Doc. 44)

"A conspiracy exists when there is 'an agreement to commit some illegal act and [when] the alleged coconspirator knew something of its general scope and objective though not necessarily its details.'" *United States v. Quiroz*, 874 F.3d 562, 570 (7th Cir. 2017) (quoting *United States v. Mahkimetas*, 991 F.2d 379, 382 (7th Cir. 1993)). "The court 'may examine the hearsay statements sought to be admitted' and give the evidence 'such weight as . . . judgment and experience counsel.'" *Id.* (quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). However, the Seventh Circuit

has "required some evidence independent of the out-of-court statement itself to corroborate the conspiracy's existence." *Id.* (citing *United States v. Lindemann*, 85 F.3d 1232, 1239 (7th Cir. 1996)).

Additionally, the Seventh Circuit has "approved a pretrial procedure whereby a district judge can decide to admit coconspirator testimony based on the government's proffer that it has sufficient evidence to prove the existence of a conspiracy by a preponderance of the evidence at trial." *United States v. Mireles*, No. 22-1505, 2024 WL 4156601, at *5 n.3 (7th Cir. Sept. 12, 2024) (citing *United States v. Santiago*, 582 F.2d 1128, 1130–31 (7th Cir. 1978), *overruled on other grounds by Bourjaily*, 483 U.S. at 171). "This procedure helps streamline trials by permitting the government to introduce co-conspirator testimony at any point during the trial rather than waiting until after it has provided sufficient independent proof of conspiracy." *Id.* at *5 n.3 (quoting *United States v. Bey*, 725 F.3d 643, 647 (7th Cir. 2013)). "Under [Federal Rule of Evidence] 801(d)(2)(E), co-conspirator statements are admissible against a defendant if the trial judge finds by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant were involved in the conspiracy, and (3) the statements were made during and in furtherance of the conspiracy." *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016) (citing *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999)). "Under long-settled circuit law, a district court may admit co-conspirator statements conditionally based on the government's pretrial proffer, known in this circuit as a '*Santiago* proffer.'" *Id.* (citing *Santiago* at 1130–31). "If at the close of its case the prosecution has not met its burden

to show that the statements are admissible, the defendant can move for a mistrial or to have the statements stricken." *Id.* (citing *Haynie*, 179 F.3d at 1050).

The Government states that Defendant Patel was "charged for his role in an India-based conspiracy that defrauded elderly victims across the Midwest," contending that Patel "was a US-based face of the conspiracy" and, thus, "is the first of the conspirators charged in this district and the only one charged at this time." (Doc. 44, pp. 1–2). The Government argues that the victims of this conspiracy can testify "[u]nder black letter law . . . about the very actus reus of the fraud scheme— the fraudulent statements and directives PATEL's coconspirators made to them to convince the victims to hand over their money to PATEL." (*Id.*, p. 2). The Government also argues that the statements of the coconspirators "are admissible for at least two reasons: (A) because they are not offered for the truth of the matter and so are not hearsay at all, *see* FED. R. EVID. 801(c); and (B) because the coconspirators' statements were "made by the party's coconspirator during and in furtherance of the conspiracy," *see* FED. R. EVID. 801(d)(2)(E)." (*Id.*).

Regarding the first point, the Government argues that the scammers' false statements are not hearsay because they are being introduced to prove their falsity (*Id.*, pp. 5–6) and because they are not being admitted for the truth of the matter asserted, but rather "to show the victims' state of mind." (*Id.*, p. 6 (citing *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993); *Talmage v. Harris*, 486 F.3d 968, 973 (7th Cir. 2007))). On the second point, the Government makes a *Santiago* proffer, arguing that the evidence will show that a conspiracy to defraud elderly victims existed, that Defendant Patel was part of this larger criminal enterprise and acted in

concert with the India-based scammers to commit a crime, and that his coconspirators' phone calls to victims, text messages, and counterfeit documents were made in furtherance of the conspiracy. (*Id.*, pp. 11–13).

The Court concurs with the Government that Seventh Circuit caselaw indicates that the scammers' false commands are not hearsay because they are not assertions of fact. *See United States v. White*, 639 F.3d 331, 338 (7th Cir. 2011) (citing *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999)). Additionally, statements admitted to show the victims' state of mind fall clearly outside the definition of hearsay. *See* FED. R. EVID. 803(3) ("A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . . .").

Additionally, the Court holds that the Government's *Santiago* proffer sufficiently establishes by a preponderance of the evidence that Defendant Patel was part of an existing conspiracy and that the communications made to the elderly victims by Patels' coconspirators masquerading as various government officials were made in furtherance of this conspiracy. Although Patel has tried to argue that he was not aware of the illegality of his actions, the Government notes that "[i]f you drive all over the Midwest picking up shoeboxes with thousands of dollars in cash from little old ladies, then you know the little old ladies are being conned," especially since Patel was stopped by the police after meeting with a victim in 2022. (Doc. 44, p. 12). The Court is satisfied that the Government has made the required evidentiary showing in is *Santiago* proffer here.

**II. Government's Second Motion in Limine (Doc. 49)**

In its Second Motion in Limine, the Government seeks to pre-authenticate business records from various financial institutions, from APMEX (a precious metals dealers), and from the United Parcel Service ("UPS") pursuant to Federal Rule of Evidence 902(11). (Doc. 49, p. 1). They argue that these records fall under the "records of a regularly conducted activity" and, as such, are self-authenticating. (*See* Doc. 49, pp. 4–5 (citing FED. R. EVID. 902(11)). As the Government notes, such records must satisfy the business records requirements in accordance with Federal Rule of Evidence 803(6)(A)—(C); namely, such records are admissible if they are accompanied either by a certification of their custodian or by another qualified person that satisfies three requirements: "(A) that the records were 'made at or near the time by—or from information transmitted by—someone with knowledge'; (B) that they were 'kept in the course of a regularly conducted activity of a business'; and (C) that 'making the record was a regular practice of that activity.'" (Doc. 49, pp. 4–5 (citing FED. R. EVID. 803(6)(A)–(C))). They also argue that the Sixth Amendment Confrontation Clause is not implicated by the admission of such documents. (*See id.*, p. 5 (citing *Crawford v. Washington*, 541 U.S. 36 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009); *United States v. Norwood*, 982 F.3d 1032, 1043 (7th Cir. 2020))).

The Court agrees with the Government that the business records it seeks to admit are self-authenticating under the "records of a regularly conducted activity" provision of Federal Rule of Evidence 902(11). The Government has already provided the exhibit and bates numbers of the records it seeks to admit to both the Court and

to Defendant Patel, all of which were provided by certified custodians. (*See* Doc. 45). The Court also agrees that Seventh Circuit caselaw indicates that business records do not implicate Confrontation Clause issues.

### III. Government's Third Motion in Limine (Doc. 50)

The Government's Third Motion in Limine concerns the admission of translations of conversations Defendants Patel had via WhatsApp in a mix of English and Gujarati with his coconspirators and from an interview with a bilingual Homeland Security Investigations ("HSI") agent largely conducted in Hindi. (*See* Doc. 50, p. 3). The Government wishes to enter court-certified English translations of the Gujarati WhatsApp messages into evidence and plans to ask Defendant Patel to stipulate to the accuracy of these messages. (*See id.*). If Defendant Patel refuses to stipulate, the Government plans to qualify the court-certified translator as an expert and to have a law enforcement officer testify as to the relevance of the messages to the case. (*See id.*). The Government plans to have the bilingual HSI agent testify in English as to what Defendant Patel told her in Hindi. (*See id.*, p. 4).

The Court agrees with the Government's proposed plan for handling material originally written in Gujarati and the contents of the interview conducted in Hindi provided that both the original text messages and the translations are admitted into evidence in accordance with the best-evidence rule enumerated in Federal Rule of Evidence 1002. *See United States v. Chavez*, 976 F.3d 1178, 1195 (10th Cir. 2020) ("Put simply, under the plain meaning of Rule 1002, the best-evidence rule does not permit courts to admit English-translation transcripts of foreign-language recordings

when the recordings themselves are not also in evidence."); *see also id.* at 1197–99 (collecting cases); *United States v. Nunez*, 532 F.3d 645, 650–51 (7th Cir. 2008).

**IV. Government's Fourth Motion in Limine (Doc. 51)**

In their Fourth Motion in Limine, the Government seeks the Court's approval to permit detectives in this case to testify as fact witnesses regarding the data extracted from Defendant Patel's cell phone. (*See* Doc. 51, p. 1). Citing to an opinion by District Judge Dugan, the Government argues that the law enforcement officers who will testify in this case do not need to be established as expert witness to testify regarding the data collected from Defendant Patel's cell phone. (*See* Doc. 51, p. 4 (citing *United States v. Smith*, No. 21-CR-30003-DWD, 2022 WL 17741100, at *7 (S.D. Ill. Dec. 16, 2022))). The Government argues that Cellebrite, the data extraction software used by law enforcement officers in this case, is solely a means to collect and organize the data from Defendant Patel's cell phone. (*See* Doc. 51, p. 4). The Government argues that the detectives do not need to be qualified as experts in accordance with Federal Rule of Evidence 702 in order to testify as to the contents of Defendant Patel's phone. (*See* Doc. 51, pp. 3–5 (citing FED. R. EVID. 702)).

In his Order, District Judge Dugan wrote:

> Here, the government contends that it is not necessary to call an expert witness to testify about the technology that underlies the extraction of data from a device for that extracted data and the officers review of it to be received into evidence. This Court agrees so long as the witness does not veer off into the realm of an expert by attempting to explain technology and forensic processes for which he has no specialized knowledge. So long as this does not occur, Rule 702's reliability requirements are not implicated. This is not to say, however, that Dobbins and Griffin may not introduce evidence of the lack of reliability or validity of the extraction process to demean the evidentiary value, accuracy and weight of the data extracted.

*Smith*, 2022 WL 17741100, at *7. The Court agrees that the law enforcement officers who will testify in this case do not need to be qualified as experts in order to discuss the data obtained from Defendant Patel's cell phone provided that they do not offer testimony on the mechanics of the Cellbrite software. If these witnesses will offer "specialized knowledge," however, they must be qualified as experts in accordance with Federal Rule of Evidence 702. As District Judge Dugan noted, this determination does not preclude Defendant Patel from challenging the reliability or validity of the Cellbrite extraction process as means to impugn its evidentiary value.

**V. Government's Fifth Motion in Limine (Doc. 67)**

In their Fifth Motion in Limine, the Government seeks this Court's approval to introduce English translations of Defendant Patel's text messages written in Gujarati prior to the testimony of the translator, Ms. Anar Bhatt. (*See* Doc. 67, p. 1). In accordance with Seventh Circuit precent, "the district court and the parties should make an effort to produce an 'official' or 'stipulated' transcript, one which satisfies all sides." *United States v. Zambrana*, 864 F.2d 494, 498 (7th Cir. 1988) (citation omitted); (*see* Doc. 67, p. 3 (citing the same)). The Government states that they "provided translations of Hindi and Gujarati communications to the defense on November 21, 2024[,] . . . followed by a proposed stipulation on December 12, 2024." (*Id.*).

Due to a scheduling conflict, Ms. Bhatt is not available to testify until after the testimony of the Wisconsin Law Enforcement Officer who pulled the text messages from Defendant Patel's iPhone. (*See* Doc. 67, p. 4). The Government asks this Court

to "'admit the proposed evidence'—namely, the translations—'on the condition that the proof be introduced later.'" (*Id.* (citing FED. R. EVID. 104(b))). They argue that Federal Rules of Evidence 104(a), 104(b), and 611(a) allow this Court to be flexible with its gatekeeping function and that ""[t]he court may admit the proposed evidence on the condition that the proof be introduced later." (*See id.*, p. 4 (quoting FED. R. EVID. 104(b)); *see also id.*, pp. 4–5)). They argue that "there is little doubt Ms. Bhatt is qualified to make the translations and will testify to their accuracy." (*See id.*, p. 5). The Government states that they conferred with Defense Counsel, who did not object to their proposed plan.

The Court concurs with the Government's plan to admit the Gujarati text messages and their translations prior to the admission of foundation testimony from Ms. Bhatt, which will be presented later in trial. *See* FED. R. EVID. 104(a)–(b), 611(a); *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

## CONCLUSION

For the reasons stated above, the Government's First, Second, Third, Fourth, and Fifth Motions in Limine (Docs. 44, 49, 50, 51, 67) are all **GRANTED**.

The Court holds that the victims in this case may testify about what Defendant Patel's coconspirators told them that led to Patel coming to their residences and taking their cash and other assets. The Court holds that the scammers' statements as delivered to the victims in this case are not hearsay under Federal Rule of Evidence 801(c)(2) and are otherwise admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).

The Court also holds that the certified business records from financial institutions, from APMEX, and from UPS are self-authenticating under Federal Rule of Evidence 902(11) and that the Government will offer evidence that such records comply with Federal Rule of Evidence 803(6)(A)–(C).

The Court concurs with the Government's plan to offer both the original WhatsApp messages in Gujarati as well as the English translations certified by a court-certified translator as well as having the bilingual HSI agent testify in English as to what Defendant Patel told her in Hindi provided that the original Hindi transcript is also admitted into evidence.

The Court holds that the Government does not need to qualify law enforcement personnel as experts pursuant to Federal Rule of Evidence 702 in order for them to testify regarding the data obtained from Defendant Patel's cell phone. However, if they will testify using sophisticated or specialized forensic knowledge, they must be admitted as experts in accordance with Rule 702. Defendant Patel is still free to question the reliability or validity of the evidence introduced from his cell phone.

Finally, the Court holds that the Government may offer the Gujarati text messages and their certified translations into evidence via the Wisconsin Law Enforcement Officer prior to the admission of foundation testimony by Ms. Anar Bhatt in accordance with Federal Rule of Evidence 104(b).

**IT IS SO ORDERED.**

**DATED:  January 13, 2025**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
