UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               ) Cause No.
     vs.                       ) 3:23-cr-30076-SPM-1
                               ) East St. Louis, IL
NIRAV B. PATEL,                ) January 14, 2025
                               ) 9:44 a.m.
          Defendant.           )


Before the
HONORABLE JUDGE STEPHEN P. MCGYLNN


**TRANSCRIPT OF FINAL PRETRIAL CONFERENCE**


FOR PLAINTIFF:    Mr. Peter T. Reed
                  Mr. Steven D. Weinhoeft
                  United States Attorney's Office
                  9 Executive Drive
                  Fairview Heights, Illinois  62208
                  peter.reed@usdoj.gov
                  steven.weinhoeft@usdoj.gov


FOR DEFENDANT:    Ms. Kim C. Freter
                  Federal Public Defender's Office
                  650 Missouri Avenue, Suite G10A
                  East St. Louis, Illinois  62201
                  kim_freter@fd.org


INTERPRETER:  Nita Shah


COURT REPORTER: Erin M. Materkowski, RPR, CRR
                erin_materkowski@ilsd.uscourts.gov
                750 Missouri Avenue
                East St. Louis, IL  62201

(Proceedings taken by machine shorthand; transcript
    produced by computer-aided transcription)

1    (In open court.)

2    COURTROOM DEPUTY:  Court calls Case No.

3    3:23-cr-30076, the *United States of America v.*

4    *Nirav Patel.*  Case is called for a final pretrial

5    hearing.

6    Parties, if you would please introduce

7    yourselves for the record.

8    MR. REED:  Good morning, Judge.  Peter

9    Reed and Steve Weinhoeft for the Government.

10    THE COURT:  Good morning, gentlemen.

11    MS. FRETER:  Good morning, Your Honor.

12    Kim Freter for Mr. Patel, and I apologize, Judge.

13    I was so certain this was on Thursday.  I have a

14    visit even set up with Mr. Patel for this

15    afternoon.  I just apologize.

16    THE COURT:  It happens.  I'm not worried

17    about it.

18    Good morning, Mr. Patel.

19    All right.  We have several Motions in

20    limine filed by the Government.  The last one being

21    filed yesterday seeking to present the deposition

22    testimony of Sergeant Towell, T-o-w-e-l-l, to the

23    jury during trial as he is out of the area or even

24    out of the country on National Guard duty.  Any

25    objection?

1        MS. FRETER:  No, Your Honor.  There was

2   one objection in the course of the deposition that

3   the Government and I were working to resolve, and I

4   think we've got that --

5        MR. REED:  The hearsay objection, I think

6   that maybe you're standing on.  Is that accurate?

7        MS. FRETER:  Yes.

8        MR. REED:  Okay.  There is one objection I

9   thought we had as well; but if you're willing to

10  rule on it today, then we can cut the video, and we

11  won't have to skip back and forth during the

12  course.

13       MS. FRETER:  I have no objection to the

14  deposition being admitted.

15       MR. REED:  It's up to you, Your Honor.  I

16  have the transcript.

17       THE COURT:  Why don't you just give me the

18  transcript.  I'll take a look at it.  Let me know

19  what page it is, and we can take it up before we

20  bring the jury in next week.

21       MR. REED:  Okay.

22       MS. FRETER:  Thank you, Your Honor.

23       COURTROOM DEPUTY:  The interpreter needs

24  to be sworn.

25       THE COURT:  I'm sorry?

1          COURTROOM DEPUTY:  I need to swear in the

2     interpreter.

3          THE COURT:  Oh, okay.

4          We have to swear in the interpreter, so

5     ma'am.

6          (Interpreter Nita Shah sworn.)

7          THE INTERPRETER:  I do.

8          COURTROOM DEPUTY:  Thank you.

9          THE COURT:  All right.  Does the defense

10    have any motions in limine?

11         MS. FRETER:  No, Your Honor.

12         THE COURT:  All right.  I did receive a

13    letter dated January the 8th from the Consulate

14    General of India.  Actually, the letter was

15    addressed to the United States Attorney and was

16    forwarded to our office.

17         The letter reads, in part:  As part of our

18    consular responsibilities, the Consulate General of

19    India in Chicago spoke to Mr. Patel through an

20    online video call arranged by the Alton Police

21    Department.  During the interaction, Mr. Patel

22    expressed dissatisfaction with his current defense

23    attorney and conveyed a request for assistance in

24    securing alternate -- or alternative legal

25    representation.  He claims to have raised this

1    matter with the presiding judge.

2        Counsel, is there a -- have you been

3    informed by anyone, any other attorney, that he or

4    she is going to be entering an appearance on behalf

5    of Mr. Patel in this case?

6        MS. FRETER:  No, Your Honor.

7        THE COURT:  Are you under the impression

8    that Mr. Patel is seeking to have you removed as

9    his counsel in this case?

10        MS. FRETER:  My understanding, Judge, is

11    that we're in the same place that we've been

12    before, that he's unhappy with the choices that

13    I've presented to him but that he does not want a

14    continuance of his trial and that he understands if

15    he gets a new trial, the trial -- or new lawyer,

16    the trial will get pushed back, and so it's the

17    same couple of conversations we've had before.

18        THE COURT:  All right.  The Court has

19    appointed an attorney to assist Mr. Patel.  The

20    Court has appointed the Chief Federal Public

21    Defender for the Southern District of Illinois.

22    She was selected by the district judges of Southern

23    Illinois after a thorough merit selection process,

24    and she was selected because of her demonstrated

25    ability as both a defense lawyer and as someone

1    with the Court the judges felt comfortable would do

2    the best job recruiting and mentoring and helping

3    other assistant federal public defenders that would

4    be in the office.  I've seen nothing in this case

5    or any other case that suggests that there would be

6    reason to be concerned about the quality of the

7    representation of the defendant in this case.  The

8    defendant -- defendant's counsel -- are you death

9    penalty certified?

10              MS. FRETER:  Yes, I am.  I'm learned

11   counsel.

12              THE COURT:  And, in fact, you had a death

13   penalty case before me -- or a death penalty

14   eligible case before me, and she is also defense

15   counsel in RICO litigation and major conspiracy

16   cases.

17              And I have not filed any -- I have not

18   forwarded any response to this letter from the

19   Consulate General of India.

20              Has the Government done anything with

21   respect to this letter?

22              MR. REED:  Judge, we have not sent a

23   response to the Consulate in regard to this letter.

24   We are consulting with our Office of IA, which is

25   the Office of International Affairs, to make sure

1    there is nothing we need to do.

2              THE COURT:  Well, I will direct that a

3    transcript of this part of the proceeding in which

4    I've addressed this letter on the record be

5    forwarded to Mr. Gautam, G-a-u-t-a-m, who is Head

6    of Chancery and the Consul, Consulate General of

7    India.

8              Any objection?

9         MR. REED:  No objection, Judge.

10        MS. FRETER:  No, Your Honor.

11             THE COURT:  All right.  We are set to

12   start trial Tuesday; is that correct?

13        MR. REED:  Yes, Judge.

14             THE COURT:  Is the Government going to be

15   ready?

16        MR. REED:  Yes, Judge.

17        MS. FRETER:  We're ready, Your Honor.

18             THE COURT:  All right.  And how long do

19   you anticipate it taking?

20             MR. REED:  Judge, I still think we should

21   be done by the end of next week, by Friday.  Some

22   of that is going to depend on timing with the

23   interpreter in court, but I feel confident we

24   should be able to finish up by the end of the

25   week.

1          MS. FRETER:  I think that's right, Judge.

2     We've worked out some stipulations.  We're hopeful

3     to work out some more, so I think we're able to cut

4     out a couple witnesses.

5          THE COURT:  How many prospective jurors do

6     you think we need to bring in?

7          MR. REED:  What's a typical?

8          THE COURT:  Forty, 45.

9          MS. FRETER:  How many did you have, Peter,

10    a couple weeks ago?

11         MR. REED:  I think we pulled in 55 because

12    of the length.

13         MS. FRETER:  How close did you get?

14         MR. REED:  I think we had 15 left.  I

15    think 40, 45 should be fine.

16         THE COURT:  Yeah, when you think of those

17    issues that might provoke a strong response from

18    potential jurors like a child victim.  Now, the

19    victims in this case were elderly.  I think if we

20    bring in 45, 46 jurors, we should be okay.

21         MS. FRETER:  I just haven't looked at the

22    weather for next week.

23         THE COURT:  I have only looked at the

24    Notre Dame-Ohio State game that's going on Monday

25    night.

1          (Off the record.)

2          THE COURT:  Let's plan on trying to

3     start -- let's get the lawyers here by 9, and

4     there's always things to take up beforehand.  We'll

5     plan to try to get the jury pool up here around 10.

6          How soon will they have the packets for

7     the lawyers to review?  Jackie, what is the normal

8     turnaround?

9          COURTROOM DEPUTY:  We have another trial

10    that day with Judge Dugan, so it may be a little

11    later than normal, but they try to have them up by

12    9, 9:30.

13         So Mr. Patel, what happens is we send

14    questionnaires to each of the prospective jurors,

15    and it gives us background information about them.

16    So they'll bring up a binder that has the answers

17    to all the questions that the jurors filled out,

18    and we'll give that to your attorney; and I'll give

19    her time to go through it and review their answers

20    to see if there's anything that points out a

21    concern.  So it probably won't be until probably

22    quarter after 10, twenty after 10 until we start

23    questioning potential jurors; but hopefully, we can

24    get the jury picked and opening statements

25    commencing early afternoon.

1          And do you know what witnesses you're

2    going to lead with?

3          MR. REED:  Yes, Judge.  We are planning to

4    have two witnesses here.  I know when we had two

5    jury venires here in December, jury selection ended

6    up taking all day.  I'm hoping that's not the case,

7    but we will have witnesses ready to go.

8          THE COURT:  You think jury selection will

9    take all day?

10          MR. REED:  I raise it simply because it

11    surprised us in December when they brought in two

12    venires for two trials at the same time.  Juror

13    selection in both cases, we only got through

14    openings.  I raise it -- it took a long time.

15    Hopefully, that doesn't happen again next week; but

16    if it does take all day, then that may back us up

17    as we're going through the week.

18          MS. FRETER:  I was in trial with Judge

19    Dugan at the same time that Mr. Reed was in trial

20    with Chief Judge Rosenstengel, and there was about

21    a hundred jurors.  Judge Dugan, I think, had asked

22    for more than he usually did, too, because of the

23    nature of that case.

24          MR. REED:  Right.

25          MS. FRETER:  And it slowed down things in

1    the jury assembly room, I think, some, and it was

2    just a weird day.

3              MR. REED:  It was a weird day.

4              MS. FRETER:  I think, because we're asking

5    for fewer jurors, and I don't know what kind of

6    case Judge Dugan has --

7              MR. WEINHOEFT:  Gun case.

8              MR. REED:  It's a gun case.

9              MS. FRETER:  So he won't need as many

10   either.  I think that it will go faster.  I don't

11   usually ever ask -- 40 minutes would be my max.

12   Usually it's closer to 15 or 20.  I just don't ask

13   that -- between the questionnaires and what's

14   already done before me, I go pretty fast, and I --

15   as soon as they bring those binders, I can stand --

16   I mean, I work while they talk, so --

17              THE COURT:  All right.

18              MR. REED:  I'm hopeful we'll be able to

19   get through witnesses on Tuesday as well.  I just

20   flag it because that happened and I think it

21   surprised us all.

22              THE COURT:  Well, if it takes all day,

23   I'll just blame it on the fact that there's two

24   jury trials and not a hangover.

25              MR. WEINHOEFT:  Judge, may I ask, what is

1    your custom and practice for -- do you normally do

2    panels?  How do you handle back striking, things

3    like that?

4         THE COURT:  So I will ask questions, basic

5    questions.  I'll take them -- I'll address

6    questions to those who are in the jury box, then

7    I'll address questions to those that are in the

8    gallery on the left side and then questions to

9    those in the gallery on the right side.

10        When we ultimately go to pick the jury, I

11   pick in groups of three.  I don't allow back

12   striking.  The Government will have to tender three

13   jurors to the defense, and the defense will have to

14   tender back three jurors; and once we agree on the

15   first three jurors, then we start the process again

16   with the next three until we get to twelve and two

17   alternates.

18        If you have any questions, if there's any

19   issues you want me to ask the jury about, that you

20   prefer I be the one to ask the question, I always

21   contemplate doing those.  There are some areas that

22   have to be delved into in certain cases that are

23   very uncomfortable for potential jurors, and I'd

24   rather them take it out on me as opposed to one of

25   the lawyers.

1           MR. WEINHOEFT:  We appreciate that.

2           THE COURT:  Okay.  Mr. Patel has his hand

3      up.  Do you want to talk to --

4           MS. FRETER:  Mr. Patel, you need to sit

5      down.

6           THE DEFENDANT:  I would like the people of

7      this Nation to know what kind of things are going

8      on here, and I insist on the media here before the

9      proceedings.

10           THE COURT:  Insist on the media what?

11           MS. FRETER:  Judge, he wants the press

12      here.  I've explained to Mr. Patel, this is an open

13      courtroom.  The press is able to come if they so

14      choose.  He's, I guess, asking that I or you invite

15      the press.  I don't do that, and so I will not do

16      that, but if the press -- Mr. Patel, you have to

17      sit down.

18           If the press want to appear, they're, of

19      course, more than welcome to as it's an open

20      courtroom.

21           THE COURT:  In the federal system,

22      Mr. Patel, the Court is open to the public

23      including the media; however, the media is not

24      allowed to broadcast the live proceedings without

25      specific permission from the trial judge.

1      Is anyone going to be requesting daily

2  transcripts in this case?

3      MR. REED:  No, Judge.

4      MS. FRETER:  No, Your Honor.

5      THE COURT:  Okay.  Erin, our court

6  reporter, is taking down every word, and so there

7  will be a written transcript of the entire

8  proceedings that can be made available to the media

9  if the media wishes.

10      From time to time, there are things in the

11  transcript that I order be sealed.  Meaning, we

12  have a formal record of it, but that part of the

13  record is not available to the public to review.

14  Sometimes there are things of a sensitive nature

15  that come up in a case where I order that that

16  portion of the trial be sealed to protect a

17  defendant or a witness or a victim from the

18  disclosure of sensitive information.

19      Now, Mr. Patel, before we start the trial,

20  I will address you in detail about your rights.

21  I'm not -- you have a lawyer, so you don't need me

22  to give you legal advice, but I will tell you that

23  you are -- you are going to begin an experience

24  that's going to be the first time you have been

25  through anything like this; however, your lawyer is

15

1    incredibly well trained and has a tremendous amount

2    of experience defending individuals such as

3    yourself in a criminal case.  Ultimately, it will

4    be your decision to make as to whether or not you

5    testify.  If you choose to testify, we will put you

6    on the stand, and you'll be able to answer

7    questions and tell the jurors your side of the

8    story.  You do not have to testify, and you cannot

9    be compelled to testify, and you should discuss

10   that with your attorney.  It's a very important

11   part of the trial strategy in trying to defend your

12   interests.

13          If you stand up and start talking to the

14   jury, you may waive your Fifth Amendment rights;

15   and if you start talking to the jury, I may have to

16   allow the Government attorneys to put you on the

17   stand and answer questions about what you just

18   said.  I don't want that to happen.  In our

19   proceedings so far, I have allowed you at times to

20   address me directly without going through your

21   attorney; but when the jury is in the courtroom,

22   I'm going to have to enforce the rules that your

23   attorney is the one who speaks for you unless and

24   until you take the stand.  All right?

25          It's obvious that this is a very stressful

1    situation for you and that you're very worried

2    about how this is all going to play out, and I

3    understand that; but we are -- I'm really going to

4    enforce the rules.  You are lucky you have the

5    attorney you have, and I mean that.  So don't get

6    upset or get mad if I prevent you from speaking out

7    at a time when you feel the need, or urgency, to

8    announce in Court whatever is on your mind.

9            All right.  Anything else we need to take

10   up for the Government?

11           MR. REED:  Nothing else, Judge.  Thank

12   you.

13           THE COURT:  Okay.

14           THE DEFENDANT:  I will fight my case

15   myself.

16           THE COURT:  You seem like a nice guy, but

17   I'm telling you that would be really foolish.  I

18   have -- I've been a lawyer since 1987.  If I was in

19   a foreign country, and I was on trial and the

20   entire trial was conducted in a language I didn't

21   understand, there's not a chance I would defend

22   myself, and I established myself as a very good

23   trial lawyer when I was in private practice.

24           Now, if you defend yourself, you have to

25   follow the rules, and you don't get to testify as

1    to facts unless you're put under oath.  You can

2    testify, but then you have to stand for

3    cross-examination.

4           Counsel, do you have a concern about your

5    client's competence; or what do you think is going

6    on other than the fact that he's presented several

7    options, and none of the options he's presented is

8    the one he wants?

9           MS. FRETER:  Judge, Mr. Patel was present

10   at the videotaped deposition that we did to

11   preserve testimony, and we had an interpreter who

12   was able to simultaneously interpret for him.  At

13   the end of the deposition, he was trying to talk to

14   both the officer and to the Government, and he --

15   from that conversation, so I'm not revealing

16   attorney-client, he sees this case very

17   differently.

18           The officer testified in a manner that the

19   Government believes is inculpatory, that shows

20   Mr. Patel is guilty of this offense, and the

21   Government feels that that's very good testimony

22   for them.  Mr. Patel, who was present for the same

23   testimony, feels that it is exculpatory, that the

24   officer's testimony and what happened shows that he

25   is not guilty of this crime or crimes.  Those views

1  are diametrically opposed, and Mr. Patel just sees

2  the case one way and the Government sees it another

3  way, and the twain may never meet.

4         And so it's my opinion that I've told

5  Mr. Patel about testifying, we worked on that, that

6  that is at the end of the case.  He's indicated to

7  me -- and this isn't a surprise to the

8  Government -- he intends to testify at this point.

9  He wants to get up and tell his side of the story.

10  I think that based on his totality of his

11  situation, I don't know that he can pass a *Faretta*

12  examination to be able to represent himself.  I

13  don't think that he's able to perform in this

14  courtroom as -- as a pro se defendant.  I think

15  that Mr. Patel's concerns may be alleviated after

16  he's testified, after he's able to, sort of, tell

17  the jury his side of the story.

18         THE COURT:  Can he read and understand the

19  English language?

20         MS. FRETER:  Not really, Judge, no.

21         THE COURT:  All right.  So any exhibits

22  that are in a written form, he is not going to be

23  able to read them and properly understand them; is

24  that correct?

25         MS. FRETER:  Yes, Your Honor.  And the

sort of fundamental basics of our legal system in terms of that there's rules, who goes first, who goes second, that -- that litigants aren't just able to talk to the court or explain their side such as the case just goes away, he's not able to -- I'm sure the Court has had folks who are sovereign citizens, and they don't believe in the Government, but this is different than that.  This is not even the understanding, sort of, that you would have from watching TV shows about courtrooms. He's just not able to really -- as the Court said, this is an experience very different from him that he had before.  The basics of it, he's just not able to appreciate at this time.  Maybe after trial, he'll understand more.  He understands witnesses are going to come in and testify, there is going to be a jury, and they're going to get to decide, and he is going to get to say his side of the story, and he's seen a portion of that because we did the videotaped deposition, but I think that he feels that if he just is able to tell the Government that he didn't do this that the case will just go away.

THE COURT:  The Government is well aware, Mr. Patel, that you maintain very strongly that you

are innocent.  I presume you are innocent, and that

presumption stays with you until the Government can

prove to the satisfaction of the jury that you're

guilty beyond a reasonable doubt of one or more of

these charges that you face.

Do we need to have a hearing on his

competency to represent himself?

MS. FRETER:  Again, Judge, Mr. Patel just

sees the case very, very differently than the

Government does.  I don't know -- so the case I

just had with Judge Dugan that I was stand-by

counsel, the defendant was pro se.  It was his

second pro se trial.  He was well familiar with the

rules of procedure, objections, hearsay, could ask

questions, also could maintain courtroom decorum.

He was able to, after both the judge's admonition

and inquiry, represent himself.  Was it a wise

decision, probably not, but he was able to exist

within the courtroom space.

It's my opinion Mr. Patel is not going to

be able to do that.  He wants questions asked of

the witnesses that are just inadmissible, that he's

not going to be able to formulate any type of

court-like examination or pick a jury or do any of

those things that a pro se defendant would be able

1   to do.

2        THE COURT:  Do you anticipate calling any

3   witnesses other than the defendant?

4        MS. FRETER:  I don't.  Judge, this case is

5   really -- it comes down to one issue only about

6   knowledge and intent, and the only person who is

7   able to demonstrate that is Mr. Patel, and the jury

8   is either going to believe him about his knowledge

9   and intent or they're not.

10        I'm able to construct a scaffolding with

11   all of these little parts from all these other

12   witnesses to show that he lacked knowledge and

13   lacked intent.  The Government will try to knock

14   that down; but ultimately, it just comes down to

15   what -- when he gets up there and testifies, do

16   they believe him or not.

17        I'm in a better position, quite frankly,

18   to put him in a place where they can relate his

19   testimony to the facts based on this scaffolding

20   that I'll construct than he is.  He is not going to

21   be able to respond to the Government's objections.

22   It's not a -- it's just my opinion.  I don't think

23   that it's -- it's not a lack of competency in terms

24   of intellectual functioning or mental health.  I

25   don't think he has either of those issues, and

22

1    we've spent quite a lot of time together.  I just

2    think that he feels very strongly and he's very

3    inflexible in his thinking, and it is very contrary

4    to how the Government feels about the same facts.

5              THE COURT:  All right.  I will question

6    the defendant on Monday to see if it's appropriate

7    to allow him to proceed representing himself with

8    you as stand-by counsel.

9              Mr. Patel, in our system people have a

10   right to an attorney.  They also have the right to

11   represent themselves.  When someone is charged with

12   crimes such as you and are facing potential

13   penalties, that give -- I have to give serious

14   consideration to whether or not a particular

15   individual has the capacity to mount a credible

16   defense against these charges.  So defending

17   yourself would mean that would you make an opening

18   statement.  Defending yourself would mean that you

19   would raise the objections, any objections, to

20   questions posed by the Government to witnesses, any

21   objections to evidence that the Government seeks to

22   present and respond to any objections that the

23   Government lodges against your presentation or

24   witnesses or evidence you wish to produce, and this

25   happens in realtime.

1          So you will be trying to do this in a
2     language you don't speak, and you would be trying
3     to respond to objections voiced in a language you
4     don't speak, and you would have to follow rules
5     that you've not read, and then you would have to
6     have a translator try to explain the rules to you
7     in realtime.

8          As a practical matter, before you would
9     testify, the jurors very well may form opinions
10    about you that may not help you, and the best
11    presentation of your case may be to have your
12    lawyer craft questions to you that would allow you
13    to tell your story, and at times you've been very
14    moving in your statement, or statements, about that
15    you're not guilty, that you didn't understand what
16    was going on.

17         I presided over a number of cases in which
18    individuals have elected to represent themselves
19    instead of allow the lawyer to do his or her job.
20    You're presumed innocent, and you -- a jury may
21    find that you are innocent, but this is a serious
22    process, and your best chance of this jury
23    concluding that the Government has not proved its
24    case against you, that bad things happened but it
25    wasn't your fault, your best chance of securing a

1    verdict in your favor is by having your lawyer take

2    the lead in handling this case.

3          Does the Government have a position on

4    this?

5          MR. REED:  Judge, I'd say two things.

6    First, with regards to *Faretta*, there seems to be

7    some significant obstacles to this request, and I

8    think the second thing that I would say, it's not

9    clear that there is a request to represent himself;

10   and having a couple days for him to think about it

11   and discuss with Ms. Freter and take it up first

12   thing Tuesday morning would make sense to determine

13   whether or not that is, in fact, what he's

14   requesting and have full knowledge with that.

15         THE COURT:  Ms. Freter?

16         MS. FRETER:  I have a meeting with

17   Mr. Patel and an interpreter set up this afternoon

18   at four o'clock, and then I think we're supposed to

19   meet again Thursday or Friday.  It's my habit

20   usually, after each witness is toward the end of

21   testifying, and I check in with my clients, and I

22   say is there anything else you want me to ask?  I

23   don't always ask those questions, but I check in.

24   I think that may help to alleviate Mr. Patel's

25   concerns that I'm not going to do what it is that

he wants.

I think that waiting until Tuesday to talk to him about if he's making a request to truly represent himself is probably a good idea.  I think, also, we could continue to check in with him throughout the course of the trial in case he changes his mind, but I think that my recollection of *Faretta* is one of the standards is, you know, whether the Court feels that a defendant is going to be able to conform to the rules of court and conform to the sort of decorum area.  If Mr. Patel is not able to restrain himself and not speak out of turn and not do those kind of things, you know, the Court can always have him removed which sometimes happens.  I'm hopeful that we don't get to that point, but that's part of the sort of *Faretta* rubric; so hopefully, between now and Tuesday Mr. Patel and I can continue to work through these issues.

THE COURT:  You should prepare yourself to be lead counsel.  There are -- Mr. Patel, I've been a judge a number of years.  I've seen people make foolish mistakes, I've seen them make foolish decisions, and sometimes I can't save them from those, and the consequences oftentimes are

1    significant.  And if I, as a trained lawyer, an

2    experienced trial lawyer, an experienced judge,

3    wouldn't undertake to represent myself in a trial

4    in a foreign country, in a foreign language I don't

5    speak, with written documents I can't read, with

6    rules of court that I had a history of not

7    following, then I don't know how you would fair any

8    better; and my fear is, is that my honest

9    assessment is that the presentation of the evidence

10    to the jury would be nowhere near as good if you

11    represented yourself than it would be if you

12    allowed your trained and experienced lawyer to

13    fight for you.

14            On several occasions, contrary to your

15    lawyer's objections, you have stood up and you've

16    addressed me, you've become very emotional, you

17    speak fast, your interpreter is probably not

18    picking up on every word you're saying because you

19    speak so fast.  Your interpreter will be at a

20    disadvantage to accurately convey the words you

21    have spoken, translating to English, and then tell

22    the jury; and I just think that's going to be a

23    very big problem for you.

24            When you tell your version of events to

25    the jury, because you will be responding to

1    questions presented to you by your lawyer, it will

2    have -- it will have a logical flow to it; and

3    because that's question-answer, question-answer, it

4    helps break up things so that your interpreter is

5    able to keep up with the presentation to the jury.

6    It will flow that much better, and that's a very

7    real -- that's a very real consideration you have

8    to seriously contemplate.

9         It's not just that you think you're

10   positive you're innocent.  It's that that message

11   has to be effectively -- effectively conveyed to

12   the jury, and you don't get a do-over if you lose.

13   If you represent yourself and you lose and you're

14   sentenced to years in jail, you don't get to come

15   back to this court and say, you know what, I know

16   realize I should have let the lawyer help me.  I

17   want -- I want a new trial where I have a good

18   lawyer defending me.  It's too late.

19        All right.  Anything else for the

20   Government?

21        MR. REED:  Nothing else, Judge.

22        MS. FRETER:  No, Your Honor.

23        THE COURT:  All right.  Tuesday morning,

24   let's try to get here by 9:15, and we'll take up

25   whatever else we need to take up.  I'm going to

28

1    grant the -- all the motions in limine that the
2    Government has filed, and we will take up -- get me
3    the information on the objection in the deposition,
4    and I will let you know my ruling on that before we
5    commence picking a jury, and we'll re-explore this
6    issue about defense -- self-defense.
7             All right.  We're adjourned.
8             (Proceedings adjourned at 10:42 a.m.)
9
10              *  *  *  *  *  *  *  *  *  *  *  *
11
12             CERTIFICATE OF COURT REPORTER
13
14    I, Erin M. Materkowski, hereby certify that
15    the foregoing is a true and correct transcript from
16    reported proceedings in the above-entitled matter.
17
18    /s/ Erin M. Materkowski          Date:  6/20/2025
      ERIN M. MATERKOWSKI, RPR, CRR
19    Official Court Reporter
      Southern District of Illinois
20    East St. Louis Division
21
22
23
24
25